PEERLESS INSURANCE CO.

v.

Sebastaio VIEGAS et al.

No. 93–624–Appeal.

Supreme Court of Rhode Island.

Dec. 13, 1995.

David J. Szerlag, Warwick, for Plaintiff.

James P. Howe, Providence, Anthony S. Buglio, Warwick, for Defendant.

## OPINION

BOURCIER, Justice.

This case is before the court on the appeal of the plaintiff, Peerless Insurance Co. (Peerless), from a Superior Court denial of its motion for summary judgment. It has long been established in Rhode Island that as a general rule only final judgments are appealable to this court. *Murphy v. Charlie's Home Improvement Co.*, 117 R.I. 324, 327, 366 A.2d 809, 811 (1976); *D'Angelo v. Ventura*, 72 R.I. 120, 48 A.2d 247 (1946); *McAuslan v. McAuslan*, 34 R.I. 462, 83 A. 837 (1912); 1 Kent, *R.I. Civ. Prac.* § 56.12 (1969). An order of the Superior Court denying summary judgment is not a final order and is not appealable.

Because of the particular importance of the issue raised by Peerless in its motion for summary judgment, we will, however, consider its appeal as a petition for certiorari and address the merits of the issue raised below. *Meehan v. Meehan*, 603 A.2d 333, 334 (R.I. 1992). *Cf. Murphy*, 117 R.I. at 326–27, 366 A.2d at 811; *Johnson v. Johnson*, 111 R.I. 46, 49–50, 298 A.2d 795, 797 (1973) (certiorari treated as direct appeal).

I

### Case Travel—Facts

On December 5, 1986, Sebastaio Viegas (Viegas) pled guilty to two first-degree and three second-degree child molestation charges and one charge of the abominable and detestable crime against nature. His

victim was Jane Doe,[1] a minor child, and the grandniece of Viegas. Some of or all the sexual assaults took place between September 20, 1981, and September 20, 1986. During that period Viegas was insured under a homeowner's policy issued by Peerless.

In 1990 John and Mary Doe, the parents of Jane, filed a civil action against Viegas in the Providence County Superior Court (P.C. 90–4313). In that civil action, still pending, they seek damages resulting from the criminal acts of sexual abuse for which Viegas was convicted. They claim therein that Viegas breached his duty of care owed to Jane and negligently inflicted emotional distress upon her and that his actions were both negligent and wanton.

On September 25, 1991, Peerless commenced an independent civil action against Viegas and John and Mary Doe in the Providence County Superior Court (C.A.91–6533). In that action it sought declaratory relief in regard to whether it was required to defend Viegas in P.C. 90–4313 and/or indemnify Viegas against the claims made by the Does in that action.

On April 30, 1992, Peerless filed a motion for summary judgment on its complaint for declaratory relief. After hearing, on October 19, 1993, the motion calendar justice in the Superior Court, relying upon this court's previous opinions in *Angelone v. Union Mutual Insurance Co. of Providence*, 113 R.I. 230, 231, 319 A.2d 344, 345 (1974); *Grenga v. National Surety Corp.*, 113 R.I. 45, 48, 317 A.2d 433, 435 (1974), and *Employers' Fire Insurance Co. v. Beals*, 103 R.I. 623, 631, 240 A.2d 397, 402 (1968), concluded that Peerless's duty to defend was mandated by the allegations of *negligence* contained in the C.A. 90–4313 complaint. We reverse.

Viegas's homeowner's policy that is in issue here provides coverage for personal liability to others "if a claim is made or a suit is brought against an insured [Viegas] for damages because of bodily injury caused by an occurrence." That homeowner's policy also provides that coverage for "personal liability and * * * medical payments to others" does not apply if that bodily injury or property damage was "*expected or intended* by the insured." (Emphasis added.) Peerless relies upon that specific liability exclusion provision in its policy of insurance with Viegas in asserting that it has no duty to defend or to indemnify Viegas. We agree.

## II

### An Insured's Intent to Cause Harm— Inferred as a Matter of Law

■ Peerless asserts here that in child sexual assault cases, the perpetrator's intent (in this case, Viegas's) to cause harm should be inferred as a matter of law, thereby relieving Peerless of its duty to defend pursuant to the intentional injury by the insured exclusion provision in its policy of insurance. That contention presents an issue of first impression in this state and permits us to address the duty of an insurer to defend against liability claimed as a result of an insured's intentional sexual molestation of a child. In general, the duty to defend an insured in this jurisdiction is determined by applying the "pleadings test." *Employers' Fire Insurance Co. v. Beals*, 103 R.I. 623, 240 A.2d 397 (1968). *See also Angelone v. Union Mutual Insurance Co. of Providence*, 113 R.I. 230, 319 A.2d 344 (1974); *Grenga v. National Surety Corp.*, 113 R.I. 45, 317 A.2d 433 (1974). That test requires the trial court to look at the allegations contained in the complaint, and "if the pleadings recite facts bringing the injury complained of within the coverage of the insurance policy, the insurer must defend irrespective of the insured's ultimate liability to the plaintiff." *Beals*, 103 R.I. at 632, 240 A.2d at 402. That duty, when blindly applied, may certainly result in the defense of "groundless, false or fraudulent" suits, but the insurer is duty bound nonetheless. *Id.* at 631, 240 A.2d at 402.

If that pleadings test were applied to the case at bar, Peerless would have a duty to defend in C.A. 90–4313 because the complaint in that case alleges bodily injury resulting from *negligent* conduct. That was the con-

---

1. The victim and her parents are referred to by fictitious names so as to protect their identity and privacy.

clusion reached by the Superior Court motion hearing justice when he denied Peerless's motion for summary judgment despite his acknowledgment that plaintiffs would probably not ultimately recover against Peerless on Viegas's homeowner's policy since "it would be a highly unusual result if the victims of this incident can show that Mr. Viegas did not intent [*sic*] to do harm." The Superior Court justice recognized the inextricable connection between an act of child sexual abuse and the resulting harm, but he denied Peerless's motion because he felt bound by our holdings in *Beals, Grenga,* and *Angelone.* It is precisely for that reason that we choose, at this time, to treat Peerless's appeal as a petition for writ of certiorari so as to reconsider our position with respect to the duty of an insurer to defend in cases involving child sexual abuse by an insured.

In *Whitt v. DeLeu,* 707 F.Supp. 1011 (W.D.Wis.1989), a child victim's parents brought suit against a school employee who allegedly sexually molested children entrusted to his care. The Federal District Court found that the intentional act exclusion provision in the applicable insurance policy relieved the insurer of its duty to defend against a damage claim resulting from the sexual molestation of minors, concluding that the insured's intent to harm would be inferred as a matter of law. There was no policy language in *Whitt* that specifically excluded coverage for any harm and damages resulting from child sexual assaults or caused by any other violations of penal statute. Notwithstanding, the Federal District Court held that there was no duty to defend, pursuant to a general intentional injury exclusion policy provision, because

> "the alleged sexual contact is so substantially certain to result in some injury, or so inherently injurious, 'that the act is considered a criminal offense for which public policy precludes a claim of unintended consequences, that is, a claim that no harm was intended to result from the act.'" *Id.* at 1014–15 (quoting *Horace Mann Insurance Co. v. Leeber,* 180 W.Va. 375, 379, 376 S.E.2d 581, 585 (1988)).

The Wisconsin Federal Court summarized its holding by saying that "because injury always ensues [from the sexual molestation of children], the offender is deemed to intend any injury resulting from the act as a matter of law." *Id.* The court stated that the only justification for a contrary holding "is that it benefits the victims by making possible another potential source of compensation for their injuries." *Id.* at 1016. Yet, however laudable that benefit may be, it was "outweighed by the effect of allowing sexual offenders to escape having to compensate minors for the harm that the courts have established is inherent in such offenses." *Id.; see also Perreault v. Maine Bonding & Casualty Co.,* 568 A.2d 1100, 1102 (Me.1990)(" 'the average person purchasing homeowner's insurance would cringe at the very suggestion that [the person] was paying for such coverage[,][a]nd certainly [the person] would not want to share that type of risk with other homeowner's policyholders,' " quoting *Altena v. United Fire and Casualty Co.,* 422 N.W.2d 485, 490 (Iowa 1988)). Accordingly, the Wisconsin Federal District Court held that the inferred intent standard should be applied in sexual assault cases, and if a policy contained an intentional injury exclusion provision, there would be no duty on the part of the insurer to defend or to provide indemnity coverage.

The holding in *Whitt* is in accord with holdings from various other jurisdictions that have thus far considered this issue. *See Whitt,* 707 F.Supp. at 1014 n. 4 (complete listing of cases adopting the inferred intent standard). The five states noted in *Whitt* that did not apply the inferred intent standard have all since revisited the issue and, upon reconsideration, have adopted the inferred intent standard. *See State Farm Fire and Casualty Co. v. Davis,* 612 So.2d 458, 464 n. 5 (Ala.1993). The inferred intent doctrine standard is now unanimously accepted in those jurisdictions that have considered the issue. This court finds that unanimous judicial acceptance to be persuasive.

 Accordingly, we will join those jurisdictions that have addressed this issue. We will infer an intent to cause harm and injury in cases involving the sexual molesta-

tion of a minor. In civil actions for damages that result from an act of child sexual molestation, an insurer will be relieved from its duty to defend and to indemnify its insured if the perpetrator is insured under a policy in which there is contained an intentional act exclusion provision. Thus in this instance Peerless has no duty to defend against plaintiff's complaint in C.A. 90–4313 or to indemnify its insured, defendant Viegas. The fact that the allegations in that complaint are described in terms of "negligence" is of no consequence. A plaintiff, by describing his or her cat to be a dog, cannot simply by that descriptive designation cause the cat to bark. Viegas's acts of sexual molestation that form the basis of plaintiff's complaint in P.C. 90–4313 were clearly intentional. The trial courts in this state shall hereafter infer, as a matter of law, an insured's intent in this type of case to have caused the alleged harm intentionally.

### III

### Late Notice Issue

This court declines to rule on Peerless's contention regarding its late notice of the claim made against its insured, Viegas. Given this court's holding on the inferred intent issue, the question of prejudice arising from any late notice has become moot. Moreover, the late notice issue was never initially presented to the Superior Court and is not now properly before us. We, therefore, do not consider the late notice issue.

### IV

### Conclusion

We hold that in the context of the liability insurance policy in this case, the intent to cause harm on the part of the insured is inferred as a matter of law. Consequently, the intentional injury exclusion provision contained in the insurance policy in question relieves Peerless of its duty to defend and its duty to provide indemnity coverage to its insured, Viegas, in C.A. 90–4313. To the extent that *Beals, Grenga* and *Angelone* are inconsistent with this opinion, they are no longer controlling. The petition for certiorari is granted and the Superior Court's order is quashed. The papers are remanded to the Superior Court with the direction to grant Peerless's motion for summary judgment in C.A. 91–6533.

Justice LEDERBERG was not able to be present at oral argument but participated on the basis of the briefs.